FILED

May 3 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0396

DA 15-0396

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 100N

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

PHILIP JASON GILHOUSEN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-12-179B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Herman A. "Chuck" Watson, III, Attorney at Law, Bozeman, Montana

      For Appellee:

        Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
Assistant Attorney General, Helena, Montana

        Marty Lambert, Gallatin County Attorney, Eric Kitzmiller, Deputy
County Attorney, Bozeman, Montana

                                Submitted on Briefs:  February 24, 2016

                                            Decided:  May 3, 2016

Filed:

                                    _____
                                           Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On July 1, 2014, following a bench trial, Philip Jason Gilhousen was found guilty of violating § 45-5-213, MCA, assault with a weapon, a felony, and § 45-6-101, MCA, criminal mischief, a misdemeanor, in the Montana Eighteenth Judicial District Court, Gallatin County. He appeals from the judgment entered against him. The sole issue on appeal is whether Gilhousen was afforded effective assistance of trial counsel. We affirm.

¶3 On September 10, 2012, Gilhousen chased a man into the Pizza Hut restaurant on East Main Street in Bozeman, Montana. He carried a piece of metal rebar, which he used to hit the front door of the restaurant and shatter the glass. He left the restaurant and attempted to pry a license plate from a parked vehicle. He then left the Pizza Hut premises, carrying both the metal rebar and a metal fencepost. He crossed paths with a male passerby, whom he did not know, and struck him with the fencepost, hitting the male's left arm and abdomen. He next encountered a UPS driver, who noticed Gilhousen was extraordinarily agitated. After Gilhousen began moving aggressively toward the driver, the driver sought refuge in the locked cargo area of his delivery truck. Gilhousen

then struck the side of the delivery truck with the driver inside. Gilhousen next approached a man driving his vehicle near the Pizza Hut. The man believed Gilhousen wanted to cross the street so he slowed down. Gilhousen struck the passenger side of the truck with one of the metal objects he was carrying, gouging the side of the truck.

¶4 Bozeman police officer Jonathan Ogden responded to a police call regarding Gilhousen's behavior. Officer Ogden located Gilhousen walking west from the Pizza Hut. Officer Ogden ordered Gilhousen to drop the metal objects, and Gilhousen complied. Gilhousen then removed his shirt and began wrapping it around his hand. Officer Ogden ordered Gilhousen to drop the shirt, to which Gilhousen eventually complied, but then lowered himself to the ground on top of the objects he had dropped. When Officer Ogden ordered Gilhousen to stand and move away from the objects he noticed Gilhousen held an open knife in his hand. In the meantime other officers had arrived to assist Officer Ogden. Gilhousen took a step toward the officers, knife in hand. The officers then pulled their duty weapons and Officer Ogden instructed Gilhousen to drop the knife, move away from the objects, place his hands on his head, and kneel on the ground. Gilhousen complied. Officer Ogden testified Gilhousen looked as though he might have been slightly confused, but seemed to come to realize the situation with multiple officers on the scene and complied with his commands.

¶5 Gilhousen is chronically mentally ill, with a long history of psychotic episodes, including violent episodes with criminal conduct. He suffers from schizoaffective disorder, bipolar type. Initially, he hired two attorneys to represent him against the charges stemming from the September incidents. Throughout the course of their

3

representation Gilhousen's mental illness was discussed as to whether Gilhousen should be examined to determine if he suffered from a mental disease or defect at the time of the offenses. At defense counsel's request, presiding Judge Salvagni issued an order for Gilhousen's mental examination and he was placed on a waiting list at the Montana State Hospital (MSH). Ultimately, Gilhousen objected to the evaluation, stated to the trial judge he understood the proceedings, fired his attorneys, and was appointed a public defender, Andrew Breuner. Breuner filed a motion to withdraw the request for a mental evaluation, citing speedy trial concerns. Gilhousen's current claims of ineffective assistance of counsel are based on Breuner's decision not to raise the defense of mental disease or defect, and only raise evidence of mental illness at sentencing.

¶6 A criminal defendant may raise the issue of mental disease or defect at two separate points during a criminal proceeding. The defendant may present evidence at trial that he suffers from a mental disease or defect that makes him unable to have had the requisite state of mind at the time the offense was committed. Section 46-14-102, MCA; *State v. Korell*, 213 Mont. 316, 322, 690 P.2d 992, 996 (1984). After conviction, a defendant may present evidence that the defendant was unable to appreciate the criminality of his conduct or to conform his conduct to the law due to a mental disease or disorder. Section 46-14-311, MCA; *Korell*, 213 Mont. at 323, 690 P.2d at 996.

¶7 Ineffective assistance of counsel claims that are based on the facts of record must be raised on direct appeal. *Hagen v. State*, 1999 MT 8, ¶ 12, 293 Mont. 60, 973 P.2d 233. When a record does not illuminate the basis for the challenged acts or omissions of defense counsel, objections must be raised in a petition for postconviction relief. *Hagen*,

4

¶¶ 12, 15. The record is silent as to why Breuner chose not to raise the defense of mental disease or defect. The record indicates that Breuner requested the court withdraw the request for a mental health evaluation because of speedy trial issues due to the waiting period of the evaluation at the MSH. The record also indicates Gilhousen sought his own psychological evaluation privately. The record further indicates from Gilhousen himself that he adamantly did not want an evaluation at the MSH. There are reasonable tactical reasons that Breuner may have had to justify choosing not to raise a mental disease or defect defense, or he may have been simply carrying out his client's wishes. Based on this record we cannot definitively address Gilhousen's claims of ineffective assistance of counsel. The appropriate method of addressing these allegations of ineffectiveness is through postconviction relief.

¶8     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶9     Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE